UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW HAMPSHIRE


<u>UBS Financial
Services, Inc.</u>
                                        Civil No. 13-cv-4-JNL
     v.                                 Opinion No. 2014 DNH 031

<u>Glen Brescia and
the Estate of Toni
Ann Brescia</u>


**MEMORANDUM ORDER**

This is a dispute over whether two individual retirement accounts ("IRAs"), held by a decedent, Toni Ann Brescia, belong to her estate or to her ex-husband, Glen Brescia.  Despite their intervening divorce, Glen was designated as the beneficiary of the accounts at the time of Toni Ann's death.  In making a claim to the IRAs nonetheless, the estate argues that, through their divorce stipulation and accompanying "Release Agreement," Toni Ann and Glen "unambiguously articulate[d] an intent to relinquish any anticipatory or expectancy interest in each other[s'] investments or retirement accounts," or, in any event, that this court should reform the agreement to provide for such a result. Glen disagrees as to both the estate's interpretation of the agreement and its right to reformation.

This court has diversity jurisdiction over this action, see 28 U.S.C. § 1332(a)(1), which Glen, a citizen of Massachusetts,

commenced by seeking a declaratory judgment of his sole right to the IRAs against UBS Financial Services, Inc., the custodian of the account and a citizen of New Jersey.  UBS responded by bringing a third-party complaint for interpleader, see 28 U.S.C. § 1335, against both Glen and the estate, which is a citizen of New Hampshire, see id. § 1332(c)(2).  The estate, for its part, then brought a cross-claim against Glen, seeking a declaratory judgment of its sole right to the IRAs.[1]  Each party has filed a motion seeking summary judgment, see Fed. R. Civ. P. 56, on its own claim, and against the other's claim, to the IRAs.  The parties declined the court's offer of oral argument.

For the reasons explained fully below, the court grants Glen's motion for summary judgment, and denies the estate's, resulting in an award of the IRAs to Glen.  The New Hampshire Supreme Court has held that "a divorce decree or stipulation which merely releases all claims of one party to the property of the other does not, in the insurance policy context, destroy the beneficiary status of the first party, because the beneficiary status is not a vested property right." Dubois v. Smith, 135 N.H. 50, 59 (1991).  This rule, which the New Hampshire Supreme Court has since applied to an IRA as well, Est. of Tremaine ex

---

[1] UBS then deposited the contents of the IRAs into court and was dismissed from the action upon the parties' joint motion. See Order of Feb. 25, 2013.

rel. Tremaine v. Tremaine, 146 N.H. 674 (2001), dictates the outcome here. Dubois likewise dooms the estate's reformation claim, since here (as there) the record contains no evidence that the parties "agreed to forever forfeit [the ex-spouse's] beneficiary interest." 135 N.H. at 60 (quotation formatting omitted). So, despite the estate's game attempts to distinguish these cases--and whatever the equitable appeal of its suggestion that Toni Ann would "want [her] assets to be inherited by family members or loved ones, instead of [her] ex-spouse[]"--this court must award the IRAs to Glen.

## I. Applicable legal standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial, and "material" if it could sway the outcome under applicable law. See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010). In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving" parties. Id. On cross-motions for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn." Merchants Ins. Co. of

N.H., Inc. v. U.S. Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998) (quotation marks omitted).

## II.  **Background**

The underlying facts are more or less undisputed.  Glen and Toni Ann were married in 1999.  During the marriage, Toni Ann opened two IRA accounts with UBS, executing, for each account, an "IRA Application and Adoption Agreement" with UBS.[2]  In relevant part, each agreement (a) identified Glen as the "First Primary Beneficiary," (b) did not identify any "Second Primary Beneficiary," or contingent beneficiaries, and (c) acknowledged that "any interest in this IRA that is not effectively disposed of by the beneficiary designation I make in this Application or any subsequent beneficiary designation will be paid to my surviving spouse and if no surviving spouse to my estate."

In 2006, Glen and Toni Ann filed for divorce with the then-Salem Family Division of the Rockingham County Superior Court.  Their marriage produced no children.  The divorce was granted when the court approved a "Final Decree on Petition for Divorce or Legal Separation" executed and submitted by the parties in August 2006.  While the form provided boxes and blanks

---

[2]The accounts were not part of any employee benefit or pension plan so as to bring them within the provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.

4

to complete for the division of various marital assets, many of the blanks had been marked "see attached," an apparent reference to a "list of the division of property" appended to the form, and also signed by each of the parties. In relevant part, this list stated, "IRA - Each keep their own."

On the same day they submitted the form divorce decree, the parties also executed the "Release Agreement" mentioned above. This document states, in pertinent part, that the parties

> are not represented by Counsel, and they have agreed that they desire and intend to divide their assets independently and without legal assistance. Husband and Wife drafted an instrument to make a final and complete settlement of all matters relating to the interests of each with respect to current assets and liabilities . . . .
>
> Heretofore [*sic*], at this time the Husband and the Wife hereby waive[], renounce[], and relinquish[] unto each other, their respective heirs, executors, administrators and assigns forever, in law or in equity, all and any interest of any kind or character which either may have or may hereafter acquire in or to any real or personal property of the other and whether now owned or hereafter acquired by either.

Toni Ann died in a car accident nearly six years later, on May 5, 2012. Her estate has since come forward with a "Last Will and Testament," which she purportedly executed on April 23, 2012, just 12 days prior to her death.[3] This instrument leaves (with

---

[3]While the version of this instrument filed with this court bears Toni Ann's purported signature, as well as those of two witnesses to her attestation, Glen says he "believes it was never executed by [her] and suspects that her signature was forged

5

one exception not relevant here) "everything I own.  House, cars, bank accounts, IRAs, investments etc." to one Joseph Addario, whom the instrument identifies as Toni Ann's "Domestic Partner," and also names as the executor of the estate.  Toni Ann had no children at the time of her death.

As noted at the outset, Toni Ann had not changed the beneficiary designation in favor of Glen on either of the IRAs at any point.  At the time UBS deposited the contents of the IRAs into this court, see note 1, supra, they contained a total of $149,379.32.

## III. Analysis

As the New Hampshire Supreme Court has held, a "beneficiary's interest in [a life insurance] policy does not rise to the level of a vested property interest unless the insured is somehow prohibited from changing the beneficiary

---

after her decease."  Nevertheless, in ruling on the parties' motions for summary judgment, the court has simply assumed that the "Last Will and Testament" is authentic--i.e., it is a document drafted, if not signed, by Toni Ann, see Fed. R. Evid. 901--without regard to whether it satisfies the requisites of a valid will under New Hampshire law.  As Glen points out, the court need not decide that question to resolve this dispute between him and the estate over the IRAs.  In any event, this court almost certainly lacks jurisdiction to determine the validity of the purported will.  See Marshall v. Marshall, 547 U.S. 293, 311 (2006) ("the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate").

designated in the policy." Dubois, 135 N.H. at 58. This is so, the court explained, because "the insured may change the designated beneficiary at any time, provided that the insured has not contracted away this right." Id. Accordingly, as noted above, "a divorce decree or stipulation which merely releases all claims of one party to the property of the other does not, in the insurance policy context, destroy the beneficiary status of the first party, because the beneficiary interest is not a vested property right." Id. at 59. As also noted above, the New Hampshire Supreme Court has applied these very same principles in the IRA context, see Tremaine, 146 N.H. at 675, and the parties agree that these principles apply in this case.

  The estate argues that, despite its name, the parties' "Release Agreement" did more than merely "release all claims of one party to the property of the other." In fact, the estate maintains, the agreement--together with the contemporaneous divorce decree--"expressed the parties' mutual intent to renounce, extinguish and revoke their existing and anticipatory interests in either party's retirement accounts." The interpretation of the agreement and the decree are questions of law for the court. See Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 196 (2010); Tremaine, 146 N.H. at 675.

As the New Hampshire Supreme Court held in Tremaine, "a divorce decree must <u>unambiguously</u> evidence an intent to remove a beneficiary in order to effectively alter an original designation under an IRA contract."  146 N.H. at 675 (quotation marks and bracketing omitted; emphasis added).  The court ruled there that the language of the parties' stipulated divorce decree--"[e]ach party is awarded any interest in any pension, retirement, 401k, IRA or other retirement account that each one may have and as shown on her or his respective Financial Affidavit, free and clear of any right, title, interest, or claim of the other"--did not suffice.  Id. at 674-76.  "While it may be that the stipulation of the parties in the decree was intended to terminate the [ex-spouse's] beneficiary interest in the IRA," the court allowed, "the language could be interpreted to mean that [the ex-spouse] was to retain her interest.  Accordingly, the divorce decree fails to unambiguously change the beneficiary designation."  Id. at 676.

The language of the parties' agreement in this case likewise fails to unambiguously demonstrate their intent to remove Glen as a beneficiary of Toni Ann's IRAs.  Indeed, the relevant provisions of the agreement here are nearly identical to those in Tremaine in both the purported allocation and the purported

8

relinquishment of the parties' rights to the IRAs.  Here, the "division of property" states, "IRA - Each keep their own," while the stipulation in Tremaine stated, "[e]ach party is awarded any interest in any pension, retirement, 401k, IRA or other retirement account that each one may have."  Here, the "Release Agreement" states that each divorcing spouse "hereby waives, renounces, and relinquishes . . . all and any interest of any kind or character which either may have or may hereafter acquire in or to any real or personal property of the other," while the stipulation in Tremaine awarded each spouse "any interest" in his or her own IRA "free and clear of any right, title, interest, or claim of the other."  Tremaine, then, is controlling here.

In arguing to the contrary, the estate relies on what it calls the "far more encompassing and specific" language of the agreements between Toni Ann and Glen.  In relevant part, however, that language is no more "encompassing" or "specific" than the language in Tremaine, under which, again, "[e]ach party [was] awarded <u>any interest</u> in any . . . IRA . . . each one may have . . . , free and clear of <u>any</u> right, title, interest or claim of the other." (emphases added).  If--as the New Hampshire Supreme Court ruled--such language fails to "unambiguously evidence an intent to remove a beneficiary in order to effectively alter [the] original designation under [the] IRA contract[s]," 146 N.H.

9

at 675, then the language here fails at that task as well.  Cf. Dubois, 135 N.H. at 57 (ruling that divorce stipulation requiring husband to "'make his children the beneficiaries of his insurance policies' . . . contracted away his right to name anyone else [the] beneficiary" and therefore voided his subsequent designation of a subsequent wife).

In any event, the estate's focus on the breadth of the "Release Agreement"--including its expressed intention "to make a final and complete settlement of all matters relating to the interests and obligations of each with respect to current assets and liabilities"--is misplaced.  Again, "a divorce decree or stipulation which merely releases all claims of one party to the property of the other does not . . . destroy the beneficiary status of the first party, because the beneficiary status is not a vested property right."  Id. at 59 (emphasis added).  The simple designation of a beneficiary--which is all that ever happened here--"never bestow[s] a vested property interest in the policy."  Id.  It follows that Glen's "[b]eing a beneficiary was not a 'property right,' the result of an 'obligation . . . ,' a 'right,' or a 'claim' which was waived and relinquished by the property settlement agreement," id. (quotation formatting altered), whatever the breadth of its waiver language.

10

The estate argues that "[w]hile the Dubois decision distinguishes a beneficiary's expectancy interests from a vested property right, [Glen] and Toni Ann did not."  This is so, the estate argues, "given the identification of the couples' [*sic*] IRA[s] as 'property'" in the "division of property" attachment to their stipulated divorce decree.  But this argument--that a divorce decree should be read to incorporate the parties' misunderstanding of a legal term so as to embrace their beneficiary interests when the term, properly understood, does not--has been squarely rejected by the New Hampshire Supreme Court.  See Est. of Frederick v. Frederick, 141 N.H. 530, 532-33 (1996).  There, the estate of the decedent ex-spouse argued that a provision in the parties' divorce decree to "'release each other from any and all obligations incurred during the marriage' . . . when viewed in light of the context of the entire agreement, revealed the decedent's intent to change her beneficiary designation."  Id. at 532 (ellipse by the court omitted).  Rejecting this argument, the court stated that it "fail[ed] to see how the word 'obligations' can be read to include the designation of a beneficiary, as there was no requirement, legal or otherwise, that the decedent name or continue the [ex-spouse] as beneficiary."  Id.

11

Likewise, as just discussed, the designation of a beneficiary does not convey any property right, so the term "property" cannot be read to include each party's status as a beneficiary of the other's IRAs. This conclusion holds, moreover, despite the fact that the parties here included "IRAs" (without specifying further) on the "division of property"--after all, the divorce stipulation in Tremaine specifically awarded each spouse "any interest in any . . . IRA . . . that each one may have," but the court nevertheless found this inadequate to unambiguously effect the ex-spouses' removal as each other's beneficiaries, as already discussed. The estate's claim, once again, runs headlong into Tremaine.

As the New Hampshire Supreme Court instructed in Dubois, removing an ex-spouse as a beneficiary requires the "effort to change [the] beneficiary on a policy after the divorce or include an explicit waiver or relinquishment of the beneficiary interest in the divorce decree." Id. at 60 (quotation formatting altered). Here, Toni Ann never changed the beneficiary of either of her IRAs in the nearly six years that passed between her divorce from Glen and her death, and, as just discussed at length, nothing in the divorce stipulation, nor the contemporaneous "Release Agreement," amounts to the "explicit

waiver or relinquishment of [Glen's] beneficiary interest" contemplated by the controlling case law.

Indeed, "a divorce decree may only change a beneficiary designation when it expressly states that the parties intend such a result." Frederick, 141 N.H. at 532 (emphasis added). The stipulated decree, and the contemporaneous release agreement, contain no such express statement--and the provisions that award each divorcing spouse his or her own IRAs, and release each divorcing spouse's claim to the other's property, are simply not an effective substitute, as the New Hampshire Supreme Court has held. See Tremaine, 146 N.H. at 676.

Finally, controlling New Hampshire case law also dooms the estate's claim for reformation of the divorce stipulation and release agreement "to correct a mistake to express the parties' true intent." Under New Hampshire law, "reformation will only be granted where the evidence is clear and convincing that (1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing and (3) there is a variance between the prior agreement and the writing." Dubois, 135 N.H. at 60 (quoting Erin Foods Servs., Inc. v. 688 Props., 119 N.H. 232 (1979) (formatting altered)).

Here, for the reasons just discussed at length, the stipulation and release do not show the requisite "actual

13

agreement," i.e., that Glen and Toni Ann "agreed to forever forfeit [Glen's] beneficiary interest" in Toni Ann's IRAs. Id. While the estate points to the provision in Toni Ann's purported will that lists her IRAs among the property she wanted left to Addario,[4] this fails to support the reformation claim, for at least two reasons.

First, in evaluating such a claim, "[t]he intent of the parties is generally examined as of the time of contracting." Id. Yet the purported will was not drafted until nearly 6 years after the divorce stipulation and release agreement. Second, whatever the purported will says about Toni Ann's intent at any point, it says little if anything about the intent she and Glen shared in coming up with the stipulation and decree. And shared, rather than unilateral, intent is what determines the existence of an enforceable agreement (which, of course, requires a meeting of the minds as to the relevant terms). See, e.g., In re Sanborn

---

[4]The estate also relies on the purported will as "extrinsic evidence" supporting its interpretation of the release agreement. This argument stumbles out of the gate. A court may consider extrinsic evidence in interpreting an agreement only if the agreement is ambiguous or incomplete. See, e.g., Richey v. Leighton, 137 N.H. 661, 663 (1993). If, however, the "Release Agreement" is indeed ambiguous or silent as to whether it changes the beneficiary designation then, a fortiori, it fails to "unambiguously change the beneficiary designation" as required by New Hampshire law. Tremaine, 146 N.H. at 676. In any event, for the reasons discussed infra, a document that Toni Ann drafted in 2012 says next to nothing about the intent she and Glen shared in coming up with the divorce stipulation and release in 2006.

Reg'l Sch. Dist., 133 N.H. 513, 518 (1990).  Indeed, in Dubois, the New Hampshire Supreme Court rejected a claim to reform the divorce decree so that it divested the ex-spouse of her status as a beneficiary of the decedent's life insurance policy, ruling that the proffered evidence to that effect--a letter written by the decedent four years after the entry of the decree that referenced the policy but "stated that he felt no need to provide for [the ex-spouse] in his will"--failed to "support a conclusion that the [ex-spouse's] beneficiary interest was forfeited by mutual agreement."  135 N.H. at 60.  Here, likewise, no rational finder of fact could accept the purported will as clear and convincing evidence that Glen and Toni Ann agreed to forever forfeit his interest as a beneficiary in her IRAs at the time they signed the stipulation and release agreement.[5]

So Glen remains the beneficiary of the IRAs.  While, as the estate suggests, this result may be contrary to what Toni Ann

---

[5]In support of its reformation argument, the estate also relies on a New Hampshire statute (and similar statutes in many other states) providing that a "divorce or annulment revokes any disposition of property made by [a] trust to the former spouse" of a grantor who has reserved the power to alter, amend, revoke, or terminate the provisions of the trust.  N.H. Rev. Stat. Ann. § 551:13, III.  But Toni Ann's IRAs were not held in a trust for Glen's benefit, so this statute does not apply (as the estate seems to acknowledge in invoking the "policy interest" allegedly embodied in the statute rather than its actual effect).  To the contrary, New Hampshire follows the common-law rule that "divorce alone does not revoke an individual's status as a contractually designated beneficiary."  Tremaine, 146 N.H. at 675.

intended prior to her death--at least insofar as that intent is accurately reflected by her purported will--one of the reasons the New Hampshire Supreme Court has given for its rule demanding the unambiguous removal of a beneficiary is to "avoid[] speculating about what the parties may have intended" in the guise of attempting to construe "an ambiguity in [a] divorce decree."  Dubois, 135 N.H. at 60 (quotation formatting altered).  This court, sitting in diversity, is bound to apply that rule as fashioned by the New Hampshire Supreme Court, regardless of the strength of the reasons behind it or, for that matter, the arguably unjust result it might produce in any particular case.  See, e.g., Braga v. Genlyte Group, Inc., 420 F.3d 35, 42 (1st Cir. 2005).

**IV.  Conclusion**

For the foregoing reasons, Glen's motion for summary judgment[6] is GRANTED and the estate's motion for summary judgment[7] is DENIED.  The clerk shall enter judgment accordingly and close the case.  If no appeal of the judgment is taken within the time allowed by rule, the clerk shall release the interpleaded funds, together with interest, to Glen.

---

[6]Document no. 27.

[7]Document no. 29.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:   February 12, 2014

cc:   David E. Buckley, Esq.
      Patrick E. Donovan, Esq.